UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., *et al.,*<br>　　Plaintiffs,<br>　　　　v.<br>FOOD & DRUG ADMINISTRATION, *et al.,*<br>　　Defendants,<br>　　and<br>DURAMED PHARMACEUTICALS, INC.,<br>　　Movant. | Civil Action No. 07-0668-JDB |

### OPPOSITION TO MOTION TO INTERVENE

Plaintiffs respectfully oppose in part the motion by Duramed Pharmaceuticals, Inc. ("Duramed") to intervene as of right under FED. R. CIV. P. 24(a)(2) and permissively under FED. R. CIV. P. 24 (b). Duramed Mot., at 1. The Food & Drug Administration defendants ("FDA") consented, *id.* at 2, but according to Duramed, "[b]y refusing to consent to Duramed's intervention, plaintiffs made this motion a contested one." Duramed Memo., at 2. With respect to Duramed's counsel, *even if plaintiffs consented,* this litigation's unique procedural posture would compel this Court to address threshold jurisdictional issues inherent in Duramed's motion.[1]

### INTRODUCTION

As Duramed notes, to intervene as of right as a defendant, a movant must have standing and the existing defendants must not adequately represent the movant's interests. Duramed Memo., at 9 (*citing Fund for Animals Inc. v. Norton,* 322 F.3d 728, 731-32 (D.C. Cir. 2003)).

---

[1] Although nothing significant hangs on the difference between Duramed's allegations and the plaintiffs' understanding of the facts, plaintiffs note that Duramed's parent corporation (not Duramed) contacted them about intervention, and the plaintiffs consented in part. *See* Ex. 1 (email from Lawrence J. Joseph, for plaintiffs, to Ana C. Reyes, for Barr Pharmaceuticals).

Similarly, to intervene permissively, a movant must present an independent ground for subject-matter jurisdiction. *Id.* at 17-18 (*citing EEOC v. Nat'l Children's Ctr., Inc.,* 146 F.3d 1042, 1046 (D.C. Cir. 1998)). Of course, standing is an integral component of subject-matter jurisdiction. *Steel Co. v. Citizens For a Better Env't,* 523 U.S. 83, 94-95 (1998); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937) (to invoke federal subject-matter jurisdiction, party must establish existence of "justiciable controversy" with the adverse party – one that is "definite and concrete, touching the legal relations of parties having adverse legal interests").

In this brief, plaintiffs dispute Duramed's arguments against the adequacy of the federal defendants' representation *at this stage* of the litigation (Section I) and argue that the Court must resolve plaintiffs' standing – based on the pleadings – before the Court can grant Duramed's motion (Section II). In addition, because Duramed appears to consider this Court an appropriate forum in which to air its "serious[] disagree[ment with FDA] about the safety and effectiveness of Plan B for OTC use by women 17 and younger," Duramed Memo., at 15, plaintiffs ask the Court to hold that Duramed is estopped from making any such argument (Section III).

## ARGUMENT

### I.  FDA ADEQUATELY RESPRESENTS DURAMED FOR NOW

At this stage of the proceedings, the interests of the FDA and Duramed are completely aligned: seeking dismissal of the entire complaint for lack of standing and, alternatively, dismissal under Rule 12(b)(6) of Counts II, IV, V, and VI. Unlike the Federal Defendants, Duramed seek dismissal for plaintiffs' failure to file a citizen's petition pursuant to 21 C.F.R. §10.25(a). Duramed Mot. to Dismiss, at 16-18. Duramed's basis for dismissal appears to be confined to plaintiffs' citation of several extra-record materials on efficacy, *see id.,* at 17, which plaintiffs cited to assure this Court that remand would not be an empty gesture. Compl. ¶¶66, 67.

Because the Court readily can ignore these non-record citations and plaintiffs readily can amend the complaint to remove them, FDA's failure to raise them as a basis for *dismissal* "amount[s] to little more than quibbles over litigation tactics," and certainly not a basis for finding FDA inadequate at this stage. *Jones v. Prince George's County,* 348 F.3d 1014, 1020 (D.C. Cir. 2003). Indeed, given this Court's independent duty to police its subject-matter jurisdiction, *Steel Co., supra,* plaintiffs do not see how Duramed can contend otherwise.[2]

Plaintiffs acknowledge that Duramed and the FDA's interests will diverge after plaintiffs establish their subject-matter jurisdiction, and plaintiffs consent to Duramed's intervention after that point. *See* Ex. 1 (email from Lawrence J. Joseph to Ana C. Reyes). Ample authority supports the concept of partial or limited intervention. *Hawaii Longline Ass'n. v. National Marine Fisheries Service,* 281 F.Supp.2d 1, 21 (D.D.C. 2003) (court "expressly limited the scope of intervention to defending [agency's] actions"); *Fund For Animals, Inc. v. Norton,* 322 F.3d 728, 738 (D.C. Cir. 2003) ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.") (*quoting* FED. R. CIV. P. 24(a) advisory committee's note on 1966 amendment); *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 537 & n.8 (1972) ("intervention is limited to the claims of illegality presented by the Secretary's complaint"). Although Duramed provides a long list of drug cases in which the Court allowed intervention without "address[ing] the intervention analysis," Duramed Memo., at 15 & n.10,

---

[2]   Duramed does not (and could not) contend that a citizen petition is a prerequisite to judicial review for final agency action. *See, e.g., Cutler v. Hayes,* 818 F.2d 879, 888 n.61 (D.C. Cir. 1987) (endorsing district-court jurisdiction to review orders affecting new-drug status).

3

which are precisely the type of "drive-by jurisdictional rulings… [that] have no precedential effect." *Steel Co.,* 523 U.S. at 91.

## II.    COURT MUST RESOLVE PLAINTIFFS' STANDING

As indicated at the outset of this brief, both forms of intervention require Article III standing. For Duramed to face an actual or imminent threat to its financial stake in Plan B, Duramed Memo., at 2-3, 7-8, 12, however, this litigation must present a threat to the Supplemental New Drug Application ("SNDA") for Plan B. For this litigation to present that threat, the plaintiffs must have standing. Thus, unless plaintiffs *already* have standing (*i.e.,* in their pleadings), Duramed lacks standing (intervention of right) and an independent basis for subject-matter jurisdiction (permissive intervention). In either case, this Court would lack jurisdiction to grant Duramed's motion to intervene until after plaintiffs survive FDA's motion to dismiss.

To establish standing, a plaintiff generally must show that: (1) the challenged action constitutes an "injury in fact," (2) the injury is "arguably within the zone of interests to be protected or regulated" by the relevant statutory or constitutional provision, and (3) nothing otherwise precludes judicial review. *Ass'n of Data Processing Serv. Org., Inc. v. Camp,* 397 U.S. 150, 153 (1970). As a membership organization, AAPS may establish standing either in its own right or on behalf of its members. *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977); *cf. Int'l Union v. Brock,* 477 U.S. 274, 284, 287 (1986) (purely legal action for injunctive and declaratory relief does not require the participation of individual members).

Plaintiffs will assert standing based on injuries to physicians (and their patients), pharmacists, members interested in labeling information, and procedural rights (*e.g.,* rulemakings that did not occur, which would or could have cured plaintiffs' concrete injuries). In

4

their complaint, plaintiffs supported physician standing with an affidavit. Compl. ¶12 & Ex. 1. In defending against the motion(s) to dismiss, plaintiffs will support all of the foregoing theories of standing. Although Plaintiffs have no obligation to submit affidavits in defense of Duramed's motion to intervene, they summarize the basis for pharmacist, informational, and procedural standing in Sections II.B-II.D, *infra.*

  **A.**  <u>**Physician Standing**</u>

AAPS and SDW allege that their physician members face heretofore-unlawful competition from pharmacists because – prior to Plan B's switch from prescription ("Rx") to over-the-counter ("OTC") distribution, only their physician members lawfully could provide access to Plan B, but now pharmacists can provide that access without a physician's prescription. Compl. ¶¶3, 6, 12, 23 & Ex. 1 (Ritter Decl., ¶¶3-6). In addition, Dr. Ritter alleges (1) a constitutional injury (namely, the foregoing exposure to otherwise-illegal competition), (2) a close relationship with his patients, Ritter Decl., ¶9, and (3) the hindrance to his patients' asserting their own rights, *id.* Based on the foregoing, Dr. Ritter (and through him, AAPS, as well as many more similarly situated physician-members) assert injuries under the Durham Humphrey Amendments and the Federal Food, Drug & Cosmetic Act ("FFDCA").

    1.  <u>Constitutional Injury</u>

To establish an "injury in fact," the plaintiff must show: (1) an actual or imminent invasion of a constitutionally cognizable interest, (2) which is causally connected to the challenged conduct, and (3) which likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-62 (1992). Statutes can confer rights, the denial of which constitutes injury redressable by a court. *Warth v. Seldin,* 422 U.S. 490, 514 (1975). For injuries directly caused by agency action, a plaintiff can show an injury in fact with "little

5

question" of causation or redressability. *Id.* Under these standards, physicians clearly have standing.

Specifically, under the "competitor standing doctrine… when a challenged agency action authorizes allegedly illegal transactions that will almost surely cause [a] petitioner to lose business, there is no need to wait for injury from specific transactions to claim standing." *El Paso Natural Gas Co. v. FERC,* 50 F.3d 23, 27 (D.C. Cir. 1995); *Telephone and Data Systems, Inc. v. FCC,* 19 F.3d 42, 47 (D.C.Cir.1994) ("injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality"); *Bristol-Myers Squibb Co. v. Shalala,* 91 F.3d 1493, 1499 (D.C. Cir. 1996) ("injury claimed here is not lost sales, per se;… [r]ather the injury claimed is exposure to competition"); *Liquid Carbonic Indus. Corp. v. FERC,* 29 F.3d 697, 701 (D.C. Cir. 1994) ("Increased competition represents a cognizable Article III injury") (citing cases). Here, physicians clearly have competitive standing because FDA's action (and FDA's action alone) enabled the non-physicians lawfully to dispense Plan B, and reversing the Rx-OTC switch would terminate the non-physicians' authority to compete with physicians on this issue.

Following *Powers v. Ohio,* 499 U.S. 400, 411 (1991), this Circuit allows third-party standing *inter alia* where the first-party has suffered a constitutional injury in fact, has a close relationship with the third party, and "some hindrance" prevents the third party's asserting its own rights. *American Immigration Lawyers Ass'n v. Reno,* 199 F.3d 1352, 1361-62 (D.C. 2000). Significantly, "unawareness of the injury" qualifies as a sufficient hindrance, *id.,* at 1363 (*citing Lepelletier v. FDIC,* 164 F.3d 37, 43 (D.C.Cir.1999)), which applies here. *See* Ritter Decl., ¶9 ("patients tend to trust in the safety inherent in government approval generally and FDA approval specifically, these patients will neither appreciate nor even recognize the risks"). Thus,

6

unlike the aliens in *American Immigration Lawyers Ass'n,* 199 F.3d at 1363, AAPS members' patients generally and Dr. Ritter's specifically will not know of their exposure to the statutory harm. Similarly, in *Powers,* the third party had "little incentive" to bring suit because "of the small financial stake involved and the economic burdens of litigation." 499 U.S. at 415. If patients learn about Plan B, they simply will avoid it. As in *Powers,* they will have little incentive to sue. As such, physicians can "by default [become] the right's best available proponent." *American Immigration Lawyers Ass'n,* 199 F.3d at 1362 (quotations omitted).

And contrary to Duramed's view, the standing inquiry assumes the *plaintiffs' view* of the merits, *City of Waukesha v. EPA,* 320 F.3d 228, 235 (D.C. Cir. 2003), under which the Plan B label is highly misleading, Compl. ¶¶67-72 (Plan B label is misleading, as Duramed's own label-comprehension study confirmed). Under *plaintiffs' view* of the merits, women patients are exposed to a drug that Plan B's sponsor falsely and misleadingly advertised, as found by FDA's Division of Drug Marketing, Advertising, and Communications, Compl. ¶71, in violation of statutory rights that FFDCA creates in these patients to non-misleading labeling. *Warth,* 422 U.S. at 514 (statutes can confer rights, the denial of which constitutes injury). Under the circumstances where FDA appears to have sacrificed FFDCA's health-based standards to political pressure, Compl. ¶¶55-59, 106-108, it is entirely appropriate for physicians to assert third-party standing to enforce the FFDCA.

      2.     Zone of Interests

The "zone of interest" prong of standing is a prudential doctrine that asks whether the interests to be protected *arguably* fall within those protected by the relevant statute. *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust, Co.,* 522 U.S. 479, 492 (1998). This generous and undemanding test focuses not on Congress' intended beneficiary, but on those who in practice

can be expected to police the interests that the statute protects. *Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 444 (D.C. Cir. 1998); *Am. Friends Serv. Comm. v. Webster,* 720 F.2d 29, 52 (D.C. Cir. 1983) ("the relatively rigorous requirements for establishing congressional intent to create a private right of action should not be equated with the 'slight' indicia standard under the 'zone' test") (footnote omitted). To show that they are *arguably* "protected" by a statute, plaintiffs may demonstrate that they are either the statute's intended beneficiaries or "suitable challengers" to enforce the statute.

a. Intended Beneficiaries within Zone

For intended beneficiaries, "'slight beneficiary indicia' are sufficient to sustain standing." *Am. Friends Serv. Comm.,* 720 F.2d at 50 & n.37. Because of physicians' nexus with the dispensing of drugs and with the prescription-OTC dichotomy, their authority over prescription drugs, and their patients' interest in safe and effective drugs, physicians fall within the relevant statutory zones of interest as both first-party and third-party plaintiffs.

b. Suitable Challengers within Zone

Suitable challengers are those with "interests… sufficiently congruent with those of the intended beneficiaries that [they] are not more likely to frustrate than to further the statutory objectives." *First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin.,* 988 F.2d 1272, 1275 (D.C. Cir. 1993); *Reytblatt v. U.S. Nuclear Regulatory Comm'n,* 105 F.3d 715, 721 (D.C. Cir. 1997) (same); *MD Pharm., Inc. v. D.E.A.,* 133 F.3d 8, 13 (D.C. Cir. 1998) (same). Thus, even if certain statutory provisions are intended to benefit only pharmacists or non-patient consumers, physicians remain a "suitable" first-party and third-party challenger because their interests and their patients' interest in safe, accurately labeled drugs "further[s]," rather than "frustrate[s the]… statutory objectives."

8

c. Zone Inapposite for *Ultra Vires* Actions

Finally, for *ultra vires* agency action, the zone-of-interest test essentially does not apply. *Haitian Refugee Ctr. v. Gracey,* 809 F.2d 794, 811-12 & nn.13-14 (D.C. Cir. 1987).

> It may be that a particular constitutional or statutory provision was intended to protect persons like the litigant by limiting the authority conferred. If so, the litigant's interest may be said to fall within the zone protected by the limitation. Alternatively, it may be that the zone of interests requirement is satisfied because the litigant's challenge is best understood as a claim that *ultra vires* governmental action that injures him violates the due process clause.

*Haitian Refugee Ctr.,* 809 F.2d at 812 n.14; *accord Chiles v. Thornburgh,* 865 F.2d 1197, 1210-11 (11th Cir. 1989). Because FDA acted outside its authority (*i.e., ultra vires*), the zone of interest test does not limit physicians' standing, even if they fall outside the relevant statutory zones and fail as suitable challengers.

B. **Informational Injury**

The complaint alleges the denial of various forms of statutorily required information. *See, e.g.,* Compl. ¶¶13, 17, 23. With the appropriate affidavits submitted in defense of the motion to dismiss, such injuries would support the informational standing of some of plaintiffs' members. *See, e.g., Public Citizen v. FTC,* 869 F.2d 1541, 1546-52 (D.C. Cir. 1989); *see also FEC v. Akins,* 524 U.S. 11, 21 (1998) ("plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute"). Obtaining statutorily required label information is within the relevant statutes' zone of interests.

C. **Pharmacist Standing**

Plaintiff SDW alleges several injuries on behalf of its pharmacist members: expanded legal liability caused by removing physicians from the Rx process; expense and administrative burden; and compelled speech and other conscience-based objections. Compl. ¶¶14-16. *See, e.g.,*

*Madison v. Am. Home Products Corp.,* 358 S.C. 449, 451, 595 S.E.2d 493, 494 (S.C. 2004) (pharmacist immunity for properly filling a prescription drug in accordance with a physician's orders); *Menges v. Blagojevich,* 451 F.Supp.2d 992, 999-1002 (C.D. Ill. 2006) (pharmacists state a claim against a state contraceptive rule under First Amendment's Free Exercise clause).

### D.     Procedural Injury

As indicated in the prior sections, because plaintiffs' members have concrete interests at stake (Section II.A, *supra*) and can assert further concrete interests in defending against the motion to dismiss (Sections II.B-II.C, *supra*), FDA's procedural violations allow plaintiffs to rely on FDA's procedural violations to further support standing. *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 664 (D.C. Cir. 1996) (*en banc*). If, on remand, FDA convenes the required rulemakings (Counts V, VI), the potential for FDA to reach a different conclusion, more protective of plaintiffs' members, provides sufficient redress for Article III standing. *Sugar Cane Growers Co-op. of Florida v. Veneman,* 289 F.3d 89, 94-95 (D.C. Cir. 2002) ("If a party claiming the deprivation of a right to notice-and-comment rulemaking…. had to show that its comment would have altered the agency's rule, section 553 would be a dead letter"); *FEC v. Akins,* 524 U.S. 11, 25 (1998) (with such procedural injuries, "those adversely affected…. generally have standing to complain" "even though the [agency] might reach the same result exercising its discretionary powers lawfully").

### III.    DURAMED IS ESTOPPED FROM ARGUING PLAN B'S SAFETY FOR ADOLESCENTS

During the processing of the SNDA for Plan B, FDA at several turns presented Duramed the opportunity to challenge FDA's findings that Plan B was not safe for adolescents. *See, e.g.,* FDA Not Approvable Letter, *passim* (May 6, 2004) (Ex. 1 to Niemann Decl.). As these FDA not-approvable letters indicate, Duramed had the opportunity to submit more data to make its

case or to seek intra-FDA review in a contested (and judicially reviewable) administrative process. *See* 21 C.F.R. §314.120(a). Thus, Duramed had the opportunity to contest FDA's findings, did not avail itself of that opportunity, and now is estopped from challenging those findings here. *See, e.g., Dynaquest Corp. v. U.S. Postal Service,* 242 F.3d 1070, 1076 n.5 (D.C. Cir. 2001). To the extent that Duramed puts that forward as a basis for its intervention, *see* Duramed Memo., at 15, this Court should reject it. To the extent that this Court allows Duramed's intervention, this Court's order should explicitly prohibit Duramed's backdoor challenge to FDA's findings.

## CONCLUSION

For the foregoing reasons, this Court should hold that plaintiffs' pleadings establish their standing and allow Duramed to intervene for the balance of the litigation, limited to defending FDA. By contrast, if the Court holds that plaintiffs' pleadings do not establish their standing, the Court must deny Duramed's motion to intervene, without prejudice to their refilling a motion after plaintiffs establish their subject-matter jurisdiction.

A proposed order is attached.

Dated: July 13, 2007                             Respectfully submitted,

                                         /s/ Lawrence J. Joseph
                                        Lawrence J. Joseph, D.C. Bar No. 464777

                                        1250 Connecticut Ave., NW, Suite 200
                                        Washington, DC 20036
                                        Telephone: (202) 669-5135
                                        Telecopier: (202) 318-2254

                                        *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS ) <br> & SURGEONS, INC., *et al.,* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FOOD & DRUG ADMINISTRATION, *et al.,* ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> DURAMED PHARMACEUTICALS, INC., ) <br> ) <br> Movant. ) | Civil Action No. 07-0668-JDB |

**[PROPOSED] ORDER**

On considering movant Duramed Pharmaceutical, Inc.'s motion to intervene, the federal defendants' consent thereto, the plaintiffs' partial consent thereto, the memoranda and briefs in support and opposition thereto, and the entire record herein, and the Court having found that:

1. Plaintiff Association of American Physicians & Surgeons, Inc., has alleged facts sufficient to establish its first-party competitive standing for affected physicians and its third-party standing under the rights conferred by the Federal Food, Drug, and Cosmetic Act on behalf of their patients;

2. Movant Duramed Pharmaceuticals, Inc. meets the standards for intervention as of right as a defendant.

For the foregoing reasons, it is hereby

**ORDERED** that the motion by Duramed Pharmaceuticals, Inc. to intervene as of right is GRANTED; and it is

**FURTHER ORDERED** that movant Duramed Pharmaceuticals, Inc.'s intervention is limited to defending the actions of the Food & Drug Administration and its officers in approving

2

Supplemental New Drug Application 21-045/S011 and the related agency actions challenged by plaintiffs in this action; and it is

**FURTHER ORDERED** that the Clerk docket Duramed Pharmaceuticals, Inc.'s motion to dismiss filed with its Motion to Intervene; and it is

**FURTHER ORDERED** that plaintiffs respond to the federal defendants' and Duramed Pharmaceuticals, Inc.'s motions to dismiss within 14 calendar days of the entry of this Order.

Dated: _____, 2007

                                                    _____
                                                    **UNITED STATES DISTRICT JUDGE**

3

**Copy to:**

LAWRENCE J. JOSEPH
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
Telephone: (202) 669-5135
Telecopier: (202) 318-2254
  *Counsel for Plaintiffs*

JANE M. LYONS
Assistant United States Attorney
555 Fourth St., N.W. - Room E4822
Washington, D.C. 20530
Telephone: (202) 514-7161
Telecopier: (202) 514-8780
  *Counsel for Defendants*

RICHARD M. COOPER
ANA C. REYES
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5466
Telecopier: (202) 434-5470
  *Counsel for Movant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July 2007, I electronically filed the foregoing "Opposition to Motion to Intervene" with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of Jane M. Lyons of the U.S. Attorney's Office for the District of Columbia, on behalf of the federal defendants, and of Richard M. Cooper, on behalf of movant Duramed Pharmaceuticals, Inc..

                                           /s/ Lawrence J. Joseph
                                           Lawrence J. Joseph

**Larry Joseph**

| | |
|---|---|
| **From:** | Larry Joseph [ljoseph@larryjoseph.com] |
| **Sent:** | Thursday, May 03, 2007 5:45 PM |
| **To:** | Ana C. Reyes (areyes@wc.com) |
| **Subject:** | RE: AAPS v. FDA, No. 07-0668-RCL (D.D.C.) |

Dear Ms. Reyes,
This confirms that the plaintiffs do not consent to Barr's proposed alternate motion to intervene fully as a defendant. As I mentioned, if Barr moves for full intervention, the plaintiffs likely will cross move, which likely would include seeking to limit intervention along the lines outlined in my earlier email. You also asked whether the plaintiffs consent to extending Barr's time to file a responsive pleading. The plaintiffs do not consent. Finally, per our discussion, I will get PDF copies of the plaintiffs' comments to the FDA's Advanced Notice of Proposed Rulemaking and will provide those to you in a later email. Because of my schedule on other matters, that will likely take until next week.
Best regards,
Larry Joseph

-----Original Message-----
**From:** Larry Joseph [mailto:ljoseph@larryjoseph.com]
**Sent:** Wednesday, May 02, 2007 10:48 AM
**To:** Ana C. Reyes (areyes@wc.com)
**Subject:** AAPS v. FDA, No. 07-0668-RCL (D.D.C.)

Dear Ms. Reyes,
You asked whether the plaintiffs in the above-captioned case consent to your client Barr Pharmaceutical's intervention as a defendant.

The plaintiffs had a teleconference on the issue yesterday afternoon, and they would agree to consent to Barr's limited participation as follows:
- Intervention for the following limited purposes:
  - Negotiating, briefing, and arguing any protective orders or other limitations on use of Barr documents in the administrative record;
  - Negotiating any consent or settlement agreement that requires the court's approval;
  - Briefing and arguing the remedy, if plaintiffs prevail on the substantive merits;
  - Appealing, if the government declines to appeal a plaintiffs' victory;
- Participation as *amicus curiae* in briefing and arguing dispositive motions.

If Barr wishes to intervene to a greater extent than that, we remain willing to discuss the issue further with you. You also asked to extend Barr's time to answer or move in response to the complaint from the 20-day period for private parties to the 60-day period for federal defendants. Under the intervention to which the plaintiffs propose to consent, Barr would file its *amicus* brief(s) in support of the federal government's dispositive motion(s) and in support of the federal government's opposition to plaintiffs' dispositive motion(s), but would not itself have an obligation to answer the complaint.

After we spoke last Friday, the plaintiffs served the complaint, and I understand from the U.S. Postal Service's website that the federal defendants received service on Monday, April 30. We have not, however, yet received the return receipts for the service.

Please do not hesitate to contact me with any questions about this matter.
Best regards,
Larry Joseph

*Law Office of Lawrence J. Joseph*
*1250 Connecticut Avenue, NW, Suite 200*
*Washington, DC 20036*
*Tel: 202-747-1790*
*Fax: 202-318-2254*
*Email:* [ljoseph@larryjoseph.com](mailto:ljoseph@larryjoseph.com)

**CONFIDENTIALITY NOTICE:**
This email and any attachments are intended solely for the use of the named recipient or recipients. This email may contain privileged attorney/client communications or work product. Any dissemination of this email by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the email or any attachments or from making any use of the email or attachments. If you believe you have received this email in error, notify the sender immediately and permanently delete the email, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the email or attachments.