UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ASSOCIATION OF AMERICAN <br> PHYSICIANS & SURGEONS, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> FOOD & DRUG ADMINISTRATION, *et al.*, <br><br> *Defendants*. <br> ------------------------------------------------------------ <br> DURAMED PHARMACEUTICALS, INC., <br><br> *Defendant Intervenor*. | Civil Action No. 07:0668 (JDB) |

**REPLY MEMORANDUM IN SUPPORT OF
DURAMED PHARMACEUTICALS, INC'S MOTION TO INTERVENE**

Plaintiffs, Association of American Physicians & Surgeons, Inc., *et al.* (together, "plaintiffs"), do not, in fact, oppose the motion of Duramed Pharmaceuticals, Inc. ("Duramed") to intervene. Plaintiffs do not dispute that Duramed meets the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). Opposition to Motion to Intervene, *passim* (filed July 13, 2007) ("Opp."). Plaintiffs concede that the Food & Drug Administration ("FDA") cannot adequately represent Duramed's interests. *Id.* at 3. Plaintiffs also state that intervention is appropriate if the Court determines that plaintiffs have standing. *Id.*

The issue, according to plaintiffs, is whether Duramed has standing to intervene <u>at this stage</u> of the litigation. As discussed below, this Court has jurisdiction to grant Duramed's motion, and the D.C. Circuit has made plain that a party that meets the requirements of Rule

24(a)(2) has standing to intervene as a defendant.  Therefore, Duramed's motion is ripe for decision now, before the Court addresses the federal defendants' motion to dismiss.

Plaintiffs also argue that this Court should limit Duramed's intervention and preclude it from making certain arguments if certain issues should arise.  Plaintiffs' arguments, however, are contrary to Duramed's right to full intervention under Rule 24(a)(2), and otherwise lack merit.  They should be rejected.

## I.    THE COURT HAS JURISDICTION TO GRANT INTERVENTION NOW.

In their response, plaintiffs do not deny that Duramed meets the requirements for intervention as of right under Rule 24(a)(2).[1]  Instead, plaintiffs argue that this Court lacks jurisdiction to decide Duramed's motion to intervene "until after plaintiffs survive FDA's motion to dismiss."  Opp. 4.  This is so, they claim, because Duramed does not have standing to intervene until the Court determines that plaintiffs have standing to sue.  This argument fails under both well-settled case law and logic.

"A court has jurisdiction to determine its jurisdiction."  *Consolidated Edison Co. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006); *see also Land v. Dollar*, 330 U.S. 731, 739 (1947).  A court therefore has jurisdiction to grant intervention to a party that will then challenge the plaintiffs' standing and thus the court's jurisdiction.  Indeed, the D.C. Circuit has held that a court can grant intervention to a party even if that party's "sole purpose in intervening [is] to

---

[1] The Court can treat this point as having been conceded by plaintiffs.  *See Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) (court may treat as waived arguments not addressed in response to a motion).  Because plaintiffs have conceded that Duramed has the right to intervene under Rule 24(a)(2), the Court need not reach the question whether to permit Duramed to intervene under Rule 24(b)(2).  If that question were reached, the Court should permit Duramed to intervene under Rule 24(b)(2), for the reasons stated in Memorandum of Points and Authorities in Support of Duramed Pharmaceuticals, Inc.'s Motion to Intervene at 17-18 (filed June 29, 2007) ("Duramed Mem.").

raise a highly tenable challenge to the District Court's subject matter jurisdiction." *Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C. Cir. 2004).[2]

The D.C. Circuit has also held that, when the standing requirement is applied to a party that seeks to intervene as of right <u>as a defendant</u>, the standing issue "may be purely academic," because "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Rep. of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) ("From a pragmatic standpoint . . . any interest of such magnitude [as to support Rule 24(a) intervention as of right] is sufficient to satisfy the Article III standing requirement as well."). Duramed meets the requirements of Rule 24(a)(2), Duramed Mem. 8-17; n. 1, *supra*; and therefore Duramed has standing. Plaintiffs have not cited any contrary authority.

Disregarding *Roeder* altogether, even though it was discussed at Duramed Mem. 16-17, plaintiffs challenge Duramed's standing. They argue that their Complaint does not threaten imminent injury to Duramed if, in fact, plaintiffs do not have standing and, consequently, the Court lacks jurisdiction. The logic of plaintiffs' position makes no sense and, if adopted, would lead to absurd results. By plaintiffs' logic, their Complaint presents no threat of imminent injury to Duramed if, in fact, plaintiffs' claims are without merit. According to plaintiffs, no party could ever intervene as a defendant until it was decided that the plaintiffs had standing and that

---

[2]   Plaintiffs' contention that the litigation posture of this case is "unique," Opp. 1, is incorrect. Courts routinely allow parties to intervene <u>before</u> deciding on plaintiffs' standing or other jurisdictional issues. *See, e.g.*, *United States v. All Funds In Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol De Credito, Spain*, 295 F.3d 23, 24 (D.C. Cir. 2002) (intervening party challenged court's jurisdiction); *Brotherhood of Ry. & S. S. Clerks, Freight Handlers, Express & Station Employees v. National Mediation Bd.*, 374 F.2d 269, 272 (D.C. Cir. 1966) (per curiam) (district court granted motion by defendant and intervenor to dismiss for lack of subject matter jurisdiction); *Hitachi Metals, Ltd. v. Quigg*, 776 F. Supp. 3, 5 n.1 (D.D.C. 1991) (intervenor moved for dismissal for lack of jurisdiction and lack of standing).

the plaintiffs' claims had merit – *i.e.*, until after the plaintiffs had succeeded in establishing liability. Rule 24(a)(2) does not contemplate anything of the kind. To the contrary, the existence of the Complaint and, before its merit is assessed, the possibility that plaintiffs will succeed, create the threat of imminent injury sufficient to establish standing for an intervening defendant.

The appropriate course is to grant Duramed intervention and to then take up the motions by the federal defendants and Duramed to dismiss. Plaintiffs' contention that Duramed does not have standing to challenge plaintiffs' standing (and that plaintiffs need only respond to the federal defendants' motion to dismiss) should be rejected. Plaintiffs should have to respond to both the federal defendants' and Duramed's motions to dismiss. The most efficient use of judicial resources would be for the Court to consider and decide the two motions to dismiss together, not seriatim.

## II. PLAINTIFFS PROVIDE NO RATIONALE FOR THEIR POSITION THAT THE COURT SHOULD LIMIT DURAMED'S INTERVENTION.

Plaintiffs agree that – if they have standing – this Court should allow Duramed to intervene, but assert that the intervention should be limited. Plaintiffs provide no rationale or argument in support of the limitations they seek. In light of Duramed's uncontested, and substantial, interest in the Plan B sNDA and in the outcome of each claim in plaintiffs' Complaint, there is no basis to limit Duramed's intervention.

The effect of implementing plaintiffs' proposal – which they set forth in Opp. Exhibit 1 – is plain.[3] Duramed would be prevented from taking any action or position that is not first taken

---

[3] Plaintiffs propose to limit Duramed's intervention to:

- Negotiating, briefing, and arguing any protective orders or other limitations on use of Duramed documents in the administrative record;
- Negotiating any consent or settlement agreement that requires the court's approval;
- Briefing and arguing the remedy, if plaintiffs prevail on the substantive merits;

4

and fully supported by the federal defendants.  In particular, Duramed would be merely an *amicus* – and have no rights of a party – with respect to adjudication of the merits of the approval of Duramed's own sNDA; Duramed would have no right to make a dispositive motion (such as the motion to dismiss submitted with its motion to intervene); Duramed would have no rights whatever as to non-dispositive motions; and, if the federal defendants appealed or if the federal defendants prevailed and plaintiffs appealed, Duramed would not be a party to the appeal (unless the Court of Appeals granted intervention).  Duramed would thus be forced to rely on FDA to defend Duramed's interests – something courts have repeatedly held an agency cannot do.  *See* Duramed Mem. 13-16.

Without elaboration, plaintiffs cite three cases for the proposition that the Court can, in certain circumstances, limit intervention.  Each is easily distinguishable.

In *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 537 & n.8 (1972), the Court limited intervention by an additional plaintiff in a labor relations case to claims presented by the Secretary of Labor's complaint because adding the intervenor's proposed additional claims would have circumvented 29 U.S.C. § 483 (2000), which made suit by the Secretary the

---

- Appealing, if the government declines to appeal a plaintiffs' victory;
- Participation as *amicus curiae* in briefing and arguing dispositive motions.

Opp. 3 (citing Opp. Ex. 1).  This proposal differs from plaintiffs' Proposed Order.  There, plaintiffs propose that Duramed's intervention be "limited to defending the actions of the Food & Drug Administration and its officers in approving [the sNDA] and related agency actions challenged by plaintiffs in this action."  Proposed Order at 1-2.  The Proposed Order, for example, would bar Duramed from arguing for any particular remedy if plaintiffs were to prevail on their claim that dual prescription ("Rx") / over-the-counter ("OTC") availability of Plan B is unlawful.  *See infra* note 7.  It also would prohibit Duramed from participating in any aspects of this lawsuit that do not involve defense of past actions by FDA (*e.g.*, a jurisdictional motion, a protective order with respect to the administrative record, procedural aspects of the case).  Both Exhibit 1 and the Proposed Order are contrary to Duramed's uncontested right to intervene under Rule 24(a)(2).  Both should be rejected.

5

exclusive remedy for challenging a union election.  Here, Duramed seeks to intervene as a defendant (not a plaintiff) in an action brought by private parties (not by a Government official); and no analogous statute applies.  Moreover, Duramed has no current intention to file any counter-claim or third-party claim, and so has no current intention to expand the lawsuit.

In *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 738 (D.C. Cir. 2003), the D.C. Circuit noted that under Rule 24 a court may restrict intervention as of right if necessary for, *inter alia*, the "efficient conduct of the proceedings."  Plaintiffs do not contend that Duramed's intervention will adversely affect the efficient conduct of this litigation in any way, or that this Court cannot prevent any such prejudice by means other than limiting intervention.

In *Hawaii Longline Ass'n. v. National Marine Fisheries Service*, 281 F. Supp. 2d 1, 21 (D.D.C. 2003), this Court limited intervention because the intervening parties sought only limited intervention to respond to new claims raised by plaintiffs in an amended complaint.  Here, Duramed has an interest in each of plaintiffs' claims, and seeks full intervention to protect its interests in the Plan B sNDA.

In sum, there is no sound reason to limit Duramed's right to full intervention.

### III. PLAINTIFFS' ARGUMENT IN SUPPORT OF THEIR OWN STANDING IS IRRELEVANT TO DURAMED'S MOTION TO INTERVENE.

The heading of plaintiffs' second argument is "COURT MUST RESOLVE PLAINTIFFS' STANDING."  Opp. 4.  As explained at pages 2-4, *supra*, that argument is incorrect.  The Court should defer consideration of plaintiffs' standing until it considers the federal defendants' motion to dismiss and, if intervention is granted, Duramed's motion to dismiss.

If, in connection with this motion to intervene, the Court decides to resolve plaintiffs' standing (and whether plaintiffs are required to exhaust administrative remedies), Duramed

6

incorporates here by reference the Memorandum of Points and Authorities in Support of Duramed Pharmaceuticals, Inc.'s Motion to Dismiss (filed June 29, 2007).

IV. **PLAINTIFFS HAVE PUT DUAL Rx/OTC AVAILABILITY AT ISSUE FOR THE FIRST TIME; AND, IF THE ISSUE OF REMEDY WERE TO ARISE, DURAMED SHOULD BE PERMITTED TO ARGUE THAT OTC AVAILABILITY IS SAFE AND EFFECTIVE FOR ALL USERS OF PLAN B.**

Plaintiffs assert that Duramed is estopped from arguing that Plan B is safe for adolescents. Opp. 10. Plaintiffs raise a false issue. Neither plaintiffs nor Duramed challenges the current Rx availability of Plan B for women age 17 and younger. So, the safety of Plan B for adolescents is not currently an issue in this case.

The issue whether Plan B is safe for OTC use by women age 17 and younger <u>might</u> arise if this Court were to rule that dual Rx/OTC availability of Plan B is unlawful, and that Plan B may be available only completely Rx or completely OTC. Thus, plaintiffs' argument for an estoppel is premature. Indeed, it is Duramed's contention that the Court never need reach that issue because dual Rx/OTC availability (including Plan B's current label and labeling) is lawful.

Plaintiffs' argument also lacks merit.

First, a non-adversarial administrative proceeding does not have res judicata effect. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (common-law doctrine of res judicata applies when an administrative agency acts in a judicial capacity in adversarial proceedings); *Public Util. Dist. No. 1 v. FEMA*, 371 F.3d 701, 708 (9th Cir. 2004) (holding that "courts have declined to apply res judicata to administrative decisions that were not reached by an agency acting in a judicial capacity" and citing cases); *Roberta B. v. United States*, 61 Fed. Cl. 631, 635 (Fed. Cl. 2004) (agency decision that did not provide claimant opportunity to rebut evidence from opposing parties did not have res judicata effect). The administrative proceeding with respect to Duramed's sNDA, which culminated in the FDA decision that plaintiffs

7

challenge, was a non-adversarial proceeding in which FDA acted in a non-judicial capacity: Duramed submitted the sNDA, and FDA acted on it; there was no third party.

Second, even if, contrary to the foregoing authorities, res judicata applied generally to such proceedings, it would not apply here. Duramed has not sought, and does not currently seek, to challenge FDA's <u>decision</u> restricting OTC access to Plan B to consumers age 18 and older. Consequently, Duramed has not had an opportunity to challenge FDA's findings as to the safety of Plan B for OTC availability to younger women: Duramed could not have challenged the findings without also challenging the decision.[4]

When faced with the choice of accepting FDA's decision to permit OTC access for consumers age 18 and older (and to require a prescription for women age 17 and under) or to mount a judicial challenge to FDA's view that the administrative record contains insufficient information to show safety for women age 17 and under, Duramed accepted FDA's decision. It would be grossly unfair to deprive Duramed of the opportunity to challenge that view of the record if the alternative is not FDA's decision permitting OTC access to consumers age 18 and older, but a judicial decision that there will be no OTC access at all. That plaintiffs seek to raise the issue of Rx-only versus OTC-only for the first time in this Court, instead of at FDA (as the doctrine of exhaustion of administrative remedies requires them to do), is no reason to prejudice Duramed's right, if the issue is ever actually presented, to support OTC availability for all

---

[4] *Dynaquest Corp. v. United States Postal Service*, 242 F.3d 1070, 1076 n.5 (D.C. Cir. 2001), cited at Opp. 11, is distinguishable. There, Dynaquest lost totally on two issues in an adversarial administrative proceeding, and appealed on one issue but not on the other. Res judicata applied to the second issue. By contrast, Duramed did not lose totally on its application to switch Plan B from Rx to OTC availability. Rather, it obtained most of what it requested – OTC availability for consumers age 18 and older. Moreover, the relief Dynaquest later sought was contrary to the prior judgment against it. Duramed does not seek any new or additional relief in this case. Rather, in the event FDA's decision (*i.e.*, the one that plaintiffs claim has preclusive effect against Duramed) is held unlawful, Duramed seeks to exercise its right to argue for a particular alternative.

women who would use Plan B.[5]  In sum, there is no basis here for application of res judicata or for an equitable estoppel.

Third, plaintiffs seek to give res judicata effect to an FDA decision that plaintiffs claim is unlawful and should be vacated.  Complaint ¶¶ 1, 2, & 110(B)(i).  An unlawful decision that is vacated cannot have res judicata effect because "that which is vacated loses the ability to spawn any legal consequences."  *Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 12, 17 (D.D.C. 1998) (alternation and internal quotation omitted); *Wolcott v. Ginsburg*, 697 F. Supp. 540, 543 (D.D.C. 1988) ("As a general matter a judgment which is vacated, for whatever reason, is deprived of its conclusive effect, both as collateral estoppel and res judicata.").  Since the question whether Duramed may argue for OTC-only availability of Plan B would arise only if the FDA decision were held unlawful and vacated, res judicata cannot preclude Duramed from so arguing.

Finally, if the Court were to determine that dual Rx/OTC availability is unlawful, plaintiffs would have the Court craft a remedy regarding which type of availability – Rx-only or OTC-only – is appropriate without hearing from the party that would contend that OTC-only is the appropriate remedy.  Even in *Trbovich*, where the Supreme Court held that the intervenor

---

[5]   Contrary to Opp. 3 n.2, Duramed <u>does</u> contend that exhaustion of the administrative remedy provided by FDA's citizen-petition procedure is a prerequisite to plaintiffs' suing in federal court.  *See* Duramed Mem. 17 (citing case law).  *Cutler v. Hayes*, 818 F.2d 879, 888 n.61 (D.C. Cir. 1987), cited at Opp. 3 n.2, does not address exhaustion of administrative remedies.  Elsewhere in its opinion, the *Cutler* court did hold that the exhaustion requirement did not apply because (i) FDA had waived the issue, and (ii) exhaustion would have been futile.  *Id.* at 891.  Neither ground applies here.  Although plaintiffs allege that the federal defendants did not raise exhaustion here in their Motion to Dismiss, Opp. 2-3, they clearly did so.  *See* Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss 14-15 (filed June 29, 2007) (contending that plaintiffs cannot allege procedural injury because they did not exhaust their administrative remedies).  Therefore, there has been no waiver.  Moreover, plaintiffs have not provided any support for the proposition that exhaustion would be futile.  In *Cutler*, FDA had "committed itself not to change its rule unless judicially compelled to do so."  818 F.2d. at 891.  Plaintiffs can point to no such commitment by FDA here.

could not present new claims, it also held that "there is no reason to prevent the intervenors from assisting the court in fashioning a suitable remedial order." *Trbovich*, 404 U.S. at 537 n.8.[6]

## CONCLUSION

For the foregoing reasons, together with those stated in Duramed's opening memorandum, this Court should allow Duramed to intervene as of right as a full participant, pursuant to Federal Rule of Civil Procedure 24(a)(2).

Respectfully submitted,

By: __/s/ Richard M. Cooper_____
Richard M. Cooper (# 92817)
Ana C. Reyes (# 477354)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(tel.) (202) 434-5466
(fax)  (202) 434-5470
rcooper@wc.com
areyes@wc.com

*Counsel for Defendant Intervenor
Duramed Pharmaceuticals, Inc.*

Dated:  July 23, 2007

---

[6] Plaintiffs' Exhibit 1, relating to plaintiffs' proposed limitations on Duramed's intervention, purports to permit Duramed to "[b]rief[] and argu[e] the remedy, if plaintiffs prevail on the substantive merits." Yet plaintiffs' Proposed Order would permit Duramed only to support FDA's position (which, as to remedy, is very likely to diverge from Duramed's if the Court were to declare dual Rx/OTC availability unlawful); and plaintiffs' argument at part III would deny Duramed any opportunity to argue for Duramed's preferred remedy in that event.  In short, what plaintiffs purport to give with one hand they would take away with the other.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 23rd day of July 2007, I served counsel with a copy of the Reply Memorandum in Support of Duramed Pharmaceuticals, Inc.'s Motion to Intervene, via electronic mail to:

>Lawrence J. Joseph, Esq.
>Law Office of Lawrence J. Joseph
>1250 Connecticut Avenue, NW
>Suite 200
>Washington, DC 20036
>Email:  ljoseph@larryjoseph.com
>
>*Attorney for Plaintiffs*
>
>Jane M. Lyons, Esq.
>United States Attorney's Office
>555 4th Street, NW
>Room E4822
>Washington, DC 20530
>Email:  jane.lyons@usdoj.gov
>
>Karen Schifter, Esq.
>Office of the Chief Counsel
>United States Food and Drug Administration
>(GCF-1)
>Room 6-57
>5600 Fishers Lane
>Rockville, MD 20857
>Email:  karen.schifter@fda.hhs.gov
>
>*Attorneys for Defendants*

                                                                     /s/ Ana C. Reyes
                                                                         Ana C. Reyes