UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
ASSOCIATION OF AMERICAN                  )
PHYSICIANS & SURGEONS, INC., *et al.*,     )
                                                          )
          *Plaintiffs*,                              )  Civil Action No. 07:0668 (JDB)
                                                          )
                   v.                                   )
                                                          )
FOOD & DRUG ADMINISTRATION, *et al.*,  )
                                                          )
          *Defendants*.                            )
-----------------------------------------------------------)
                                                          )
DURAMED PHARMACEUTICALS, INC.,      )
                                                          )
          *Defendant Intervenor*.               )
_____)

## DEFENDANT INTERVENOR'S NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant Intervenor Duramed Pharmaceuticals, Inc. ("Duramed") files this notice to advise the Court of the attached published decision, *Public Citizen, Inc. v. National Highway Traffic Safety Admin.*, __ F.3d __, Nos. 05-1188, 05-1294, 05-1391, 2008 WL 169778 (D.C. Cir. Jan. 22, 2008) ("*National Highway II*"). In an earlier opinion, the D.C. Circuit held that tire manufacturers and a trade association lacked standing to challenge a safety regulation promulgated by the National Highway Traffic Safety Administration. *Public Citizen v. National Highway Traffic Safety Admin.*, 489 F.3d 1279, 1290-91 (D.C. Cir. 2007) ("*National Highway I*"). The D.C. Circuit ordered supplemental submissions from the remaining plaintiff to determine whether it satisfied Article III standing requirements. *Id.* at 1296-97. In *National Highway II*, it held that the remaining plaintiff lacked standing to challenge the safety regulation and dismissed the petition.

Duramed cited *National Highway I* in its Memorandum of Points and Authorities in Support of Motion to Dismiss First Amended Complaint at pages 5-7, and in its Reply Memorandum at page 5.

Respectfully submitted,

By:___/s/ Richard M. Cooper_____
  Richard M. Cooper (# 92817)
  Ana C. Reyes (# 477354)

  WILLIAMS & CONNOLLY LLP
  725 Twelfth Street, N.W.
  Washington, DC  20005
  (tel.) (202) 434-5466
  (fax)  (202) 434-5470
  rcooper@wc.com
  areyes@wc.com

  *Counsel for Defendant Intervenor*
  *Duramed Pharmaceuticals, Inc.*

Dated:  February 14, 2008

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 11, 2007          Decided January 22, 2008

No. 05-1188

PUBLIC CITIZEN, INC.,
PETITIONER

v.

NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION,
ET AL.,
RESPONDENTS

ALLIANCE OF AUTOMOBILE MANUFACTURERS,
INTERVENOR

———

Consolidated with
05-1294, 05-1391

———

On Petitions for Review of an Order of the
United States Department of Transportation

———

*Scott L. Nelson* argued the cause for petitioner. With him on the briefs were *Allison M. Zieve* and *Brian Wolfman*.

*H. Thomas Byron, III*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were *Peter D. Keisler*, Assistant Attorney General,

2

*Douglas N. Letter*, Attorney, *Paul M. Geier*, Assistant General Counsel, National Highway Traffic Safety Administration, and *Lloyd S. Guerci*, Assistant Chief Counsel.

*Erika Z. Jones* argued the cause for intervenor Alliance of Automobile Manufacturers in support of respondents. With her on the brief were *Adam C. Sloane*, *Kenneth N. Weinstein*, *Brad P. Rosenberg*, *John T. Whatley*, and *Nancy E. Bell*.

Before: SENTELLE, RANDOLPH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

Opinion concurring in the judgment filed by *Circuit Judge* SENTELLE.

PER CURIAM: In this case, several tire manufacturers, a tire industry trade association, and Public Citizen, Inc., petitioned for review of Safety Standard 138 adopted by the National Highway Traffic Safety Administration. Standard 138 requires new cars to have warning systems for tire under-inflation.

In our initial opinion, we held that the tire manufacturers and the trade association lacked standing to challenge the safety standard. *Public Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1290-91 (D.C. Cir. 2007). We ordered supplemental submissions from Public Citizen to determine whether it satisfied the requirements for standing under Article III of the Constitution. *See id.* at 1296-97. Based on the supplemental filings and additional oral argument, we conclude that Public Citizen lacks standing to challenge the safety standard, and we dismiss its petition.

3

I

We discussed the relevant facts and background in our original opinion in this case. *See Public Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1283-87 (D.C. Cir. 2007). We recite only a brief summary here.

In the wake of accidents and deaths caused by vehicle tire blowouts, Congress in 2000 passed the Transportation Recall Enhancement, Accountability, and Documentation Act (TREAD Act) to impose new tire-safety requirements. *See* Pub. L. No. 106-414, 114 Stat. 1800 (2000). Among other things, the TREAD Act required the Secretary of Transportation to promulgate a regulation requiring new vehicles to feature a warning system "to indicate to the operator when a tire is significantly under inflated." *Id.* § 13, 114 Stat. at 1806 (codified at 49 U.S.C. § 30123 note).

Acting through the National Highway Traffic Safety Administration and pursuant to the TREAD Act, the Secretary in 2005 published the final version of Federal Motor Vehicle Safety Standard 138. *See* Tire Pressure Monitoring Systems, 70 Fed. Reg. 18,136 (Apr. 8, 2005), *recon. granted in part*, 70 Fed. Reg. 53,079 (Sept. 7, 2005). Standard 138 requires automakers to install tire pressure monitoring systems to warn drivers "when the pressure in the vehicle's tires is approaching a level at which permanent tire damage could be sustained as a result of heat buildup and tire failure is possible." 70 Fed. Reg. at 18,148. The monitoring system must detect when one or more of a car's tires is "significantly under-inflated" – that is, when a tire (i) is at or below 20 psi, for most cars, or (ii) is 25 percent or more below "placard pressure." *Id.* at 18,143, 18,189 Table 1. "Placard pressure" is the recommended tire inflation pressure that automakers

4

must print on a placard often found on the driver's-side door jamb. 49 C.F.R. § 571.110, S4.3.

Under Standard 138, the monitoring system must cause a dashboard warning light to illuminate within 20 minutes after a tire falls below either of the two warning thresholds. 70 Fed. Reg. at 18,147-48.

Automakers must certify that the pressure monitor is compatible with the car's original set of tires but need not certify that the monitor is compatible with replacement tires. *Id.* at 18,143-44. If a driver installs replacement tires that are not compatible with the pressure monitor, the monitoring system must activate a dashboard malfunction light to warn the driver that the pressure monitor is no longer functioning; that light must not switch off unless the driver installs compatible tires. *Id.* at 18,143, 18,151. NHTSA estimated that monitoring systems will fail about one percent of the time, in part because of incompatible replacement tires. OFFICE OF REGULATORY ANALYSIS & EVALUATION, U.S. DEP'T OF TRANSP., FINAL REGULATORY IMPACT ANALYSIS: TIRE PRESSURE MONITORING SYS. FMVSS No. 138, at II-10 (2005). At "the high end," it estimated that "less than 10 percent of [replacement] tire designs would not work" with the monitoring systems "or will have other malfunction problems." *Id.* at II-10 to -11.

Public Citizen, four individual tire manufacturers, and the Tire Industry Association filed petitions for review of Standard 138 in this Court. They challenged: (i) the absence of a requirement that pressure monitors be compatible with all replacement tires; (ii) the up-to-20-minute delay between significant under-inflation and the illumination of the dashboard warning light; (iii) the use of the 25-percent-below-placard-pressure standard for under-inflation; and (iv) the

5

testing that NHTSA required for pressure monitors. *See Public Citizen*, 489 F.3d at 1286. In our initial opinion, we held that the tire manufacturers and the Tire Industry Association lacked standing because they had "failed to demonstrate a causal connection between their alleged injury and the adoption of Standard 138." *Id.* at 1298. We therefore dismissed their petitions. *Id.*

We also considered whether Public Citizen had standing to challenge Standard 138. *Id.* at 1291-98. Under Article III of the Constitution, standing to sue requires "injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief." *Id.* at 1289 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To show injury in fact, a litigant must establish "'invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* at 1292 (quoting *Lujan*, 504 U.S. at 560). Public Citizen alleged as its injury in fact an increased risk of harm to its members: Under Standard 138, some of Public Citizen's "members allegedly will suffer car accidents in the future that otherwise would be prevented" if NHTSA were to adopt Public Citizen's proposals. *Id.* at 1291.

In the original panel opinion, we explained that, under Supreme Court precedent, "Public Citizen's standing in this case is 'not precluded' but is 'substantially more difficult to establish'" because its "'asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*.'" *Id.* (quoting *Lujan*, 504 U.S. at 562). We concluded that Public Citizen had demonstrated a "concrete" and "particularized" injury – two of the three requirements for injury in fact. 489 F.3d at 1292-93; *see also Lujan*, 504 U.S. at 560. But we questioned whether Public Citizen met the third requirement – that its asserted injury be

6

"actual or imminent."  489 F.3d at 1293-95.  In particular, we
noted that Public Citizen raised only "remote and speculative
claims of possible future harm to its members."  *Id.* at 1294.
Such claims ordinarily "are properly left to the policymaking
Branches, not the Article III courts"; allowing a party to assert
such claims to obtain federal court jurisdiction threatens "to
eviscerate the Supreme Court's standing doctrine."  *Id.* at
1295, 1294.  That is because, in these kinds of increased-risk
claims, "virtually *any* citizen" can claim injury "because of a
fractional chance of benefit from alternative action."  *Id.* at
1295.    Allowing such claims "would drain the 'actual or
imminent' requirement of meaning in cases involving
consumer challenges to an agency's regulation (or lack of
regulation); would expand the proper – and properly limited –
constitutional role of the Judicial Branch beyond deciding
actual cases or controversies; and would entail the Judiciary
exercising some part of the Executive's responsibility to take
care that the law be faithfully executed."  *Id.* at 1295 (internal
quotation marks omitted).

     As we noted in the original panel opinion, however, "this
Court has not closed the door to all increased-risk-of-harm
cases."  *Id.* at 1295.  Instead, this Court has "allowed standing
when there was at least *both* (i) a *substantially* increased risk
of harm and (ii) a *substantial* probability of harm with that
increase taken into account."  *Id.* (citing *NRDC v. EPA*, 464
F.3d 1, 6-7 (D.C. Cir. 2006) and *Mountain States Legal
Found. v. Glickman*, 92 F.3d 1228, 1234-35 (D.C. Cir. 1996)).
In applying this standard, "we are mindful, of course, that the
constitutional requirement of imminence as articulated by the
Supreme Court . . . necessarily compels a very strict
understanding of what increases in risk and overall risk levels
can count as 'substantial.'"  *Id.* at 1296.

7

We concluded that the record was not sufficiently complete to determine whether Public Citizen met the *Mountain States* and *NRDC* requirements, and we ordered supplemental briefing from the parties to address:

> (i) whether Standard 138 as adopted creates a substantial increase in the risk of death, physical injury, or property loss over the interpretation of the TREAD Act that Public Citizen has advanced, and (ii) whether the ultimate risk of harm to which Public Citizen's members are exposed, including the increase allegedly due to NHTSA's action, is "substantial" and sufficient "to take a suit out of the category of the hypothetical."

*Id.* at 1297 (quoting *NRDC*, 464 F.3d at 6).

II

Public Citizen challenges three aspects of Standard 138: (i) how the warning system works for replacement tires; (ii) the up-to-20-minute lag time between significant under-inflation and warning light activation; and (iii) the 25-percent-below-placard-pressure standard for significant under-inflation.[1]

Public Citizen's standing argument relies principally on the declaration of a statistician who purported to analyze the increase in death, injury, and property damage to Public Citizen's members as a result of NHTSA's decision not to adopt Public Citizen's proposed version of Standard 138. NHTSA and the intervenor auto manufacturers have filed

---

[1] Public Citizen did not submit materials to establish standing on its fourth claim (challenging Standard 138's testing requirements). We therefore dismiss that claim for lack of standing.

8

their own statistical analyses criticizing Public Citizen's data. The auto manufacturers' statistician argues that Public Citizen's analysis is "riddled with errors and misstatements." Decl. of Intervenor's Consultant M. Laurentius Marais ¶ 6. NHTSA's Division Chief, who has been developing tire-related safety standards at the agency for 21 years, submitted a lengthy criticism of Public Citizen's analyses as "invalid," "unsupported," "incorrect," and containing "unjustified assumptions." Decl. of NHTSA Division Chief George Soodoo ¶¶ 23, 39, 45.

A

Standard 138 does not require that the warning system's pressure monitor work for replacement tires. Public Citizen argues that Standard 138 is therefore inconsistent with the TREAD Act. To establish its injury in fact to bring this claim – namely, to show a substantially increased risk of harm and a substantial probability of harm with that increase taken into account – Public Citizen points to its statistician's estimate of the difference in risk of injury between (i) a standard requiring that pressure monitors be compatible with all replacement tires and (ii) Standard 138, which NHTSA estimates will be incompatible with between 1 and 10 percent of replacement tires.

Public Citizen's submissions ignore, however, that it actually proposed that NHTSA adopt either of *two* acceptable alternatives on the replacement tire issue. Throughout the proceedings before NHTSA and this Court, Public Citizen has argued that Standard 138 should *either* require that pressure monitors be compatible with all replacement tires *or* require that automakers publish a list of compatible tires in a car's owner's manual. *See* Public Citizen Petition for Reconsideration of Std. 138, at 5 (May 23, 2005), Joint

9

Appendix ("J.A.") 1530 ("We therefore petition the agency for . . . , at a minimum, . . . a requirement that the [monitoring] system fully function with a set of identified and published manufacturer-recommended replacement tires."); Petitioners' Br. at 79 n.71 ("Public Citizen urged the agency either to (1) require that all tires be" compatible with the monitoring system "or (2) require that the [monitoring] system function fully with a set of identified and published manufacturer recommended tires."); Oct. 11, 2007 Oral Arg. Tr. at 26 ("[T]he rule that we propose is *either* that the systems work with all replacement tires or that there be a list.") (emphasis added).

   Public Citizen obviously is not injured for purposes of standing if Standard 138 poses no greater risk of injury than one of Public Citizen's proposed alternatives.  Public Citizen has the burden to demonstrate its injury.  But as the intervenor auto manufacturers correctly point out, Public Citizen has not made *any* attempt to demonstrate the difference in risk between (i) Standard 138 and (ii) Public Citizen's proposal that automakers publish a list of compatible tires.  *See* Intervenor's Supp. Br. at 19 (Public Citizen "has not established the incremental risk" to its members "posed by NHTSA's rule, as compared" to Public Citizen's "desired alternative.").  Public Citizen has not submitted any expert or other analysis demonstrating that a list of compatible tires in the owner's manual would substantially reduce the risk of death, injury, or economic loss to its members, as compared to Standard 138.  For that reason, we agree with the intervenor auto manufacturers that Public Citizen has not met its burden to establish standing with respect to the replacement tire issue.

10

B

Standard 138 allows up to 20 minutes' lag time between under-inflation and the activation of a dashboard warning light. NHTSA explained that the monitoring system was "not developed to warn the driver of extremely rapid pressure losses"; instead, it is intended to detect "more measured pressure loss (produced over weeks or months) caused by a slow leak," and therefore "a detection time of 20 minutes is not likely to pose a safety risk to the driving public." Tire Pressure Monitoring Systems, 70 Fed. Reg. 18,136, 18,148 (Apr. 8, 2005). Public Citizen argues that this lag time is inconsistent with the TREAD Act, and that the warning light should be required to activate within one minute of under-inflation. Public Citizen contends that under Standard 138, some drivers will never receive a warning (or will receive it long after the initial under-inflation) because they always or usually operate their cars on trips that last less than 20 minutes. In support of its standing, Public Citizen argues that some of these drivers will suffer accidents that would not occur with a one-minute standard.

Tellingly, Public Citizen admits that any increased risk of injury from the 20-minute lag time as compared to a one-minute lag time is "more difficult to quantify" than the risk related to its other claims. Public Citizen Supp. Br. at 16. Public Citizen's attempt to calculate risk from the 20-minute lag time is fundamentally flawed. Public Citizen's statistician tried to calculate the risk of injury from the 20-minute requirement by first estimating the percentage of Americans' commutes that are shorter than 20 minutes and then using that figure in a convoluted effort to establish increased risk of harm. This calculation is simplistic and unreliable. To begin with, Public Citizen makes no effort to determine the length of *all* car trips, including trips other than work commutes, in

11

order to arrive at an accurate overall estimate of short trips
when a warning might not sound.  Public Citizen also does
not account for the rather obvious fact that Americans with
shorter-than-20-minute commutes also operate their vehicles
on longer-than-20-minute trips.  As NHTSA's Division Chief
said, "Public Citizen's conclusions do not account for vehicle
trips not associated with commut[ing], such as errands and
other routine driving, that last longer than 20 minutes and that
would allow a system minimally compliant with the standard
to detect and warn of low tire pressure."  Decl. of NHTSA
Division Chief George Soodoo ¶ 18.   Public Citizen's
statistics are simply not reliable for determining how many (if
any) more accidents will likely occur with a 20-minute
requirement rather than a one-minute requirement.  Therefore,
Public Citizen has not met its burden to establish standing for
this claim.

C

Standard 138 uses a 25-percent-below-placard-pressure
measure to trigger the warning light for under-inflation.
Public Citizen argues that the standard violates the TREAD
Act's requirement that the system activate when a tire is
"significantly under inflated."  49 U.S.C. § 30123 note.

To demonstrate its injury in fact for this argument, Public
Citizen attempts to quantify the increased risk of injury from
the 25-percent-below-placard pressure adopted by Standard
138, as compared to the so-called "Tire & Rim Association"
or "T&RA" minimum pressure.  The T&RA pressure is set by
the Tire & Rim Association as the minimum tire pressure
required to safely carry a car operating at its maximum load.
Public Citizen here argues that any tire that falls below the
T&RA pressure is "significantly under inflated" for purposes
of the TREAD Act.  It claims that the increase in annual risk

12

of fatalities to its members as a result of Standard 138's using the 25-percent standard for under-inflation instead of the T&RA standard is between .21 and 1.2 in 1,000,000. The alleged increase in lifetime risk of fatalities is between 1.2 and 8.3 in 100,000. Public Citizen argues that these estimates exceed the risk estimates that supported standing in *NRDC v. EPA*, 464 F.3d 1, 7 (D.C. Cir. 2006), and that it therefore has standing to advocate for the T&RA pressure trigger.

The problem for Public Citizen, however, is that its submissions in support of standing are undermined by at least two significant statistical flaws. First, Public Citizen's calculations are flawed because they are based on tire-failure data that include recalled tires and tires subject to safety programs. When NHTSA calculated the benefits of Standard 138, however, it removed those tires from its analysis because their failure was most often due to structural defects and not necessarily tire pressure. *See* Decl. of NHTSA Division Chief George Soodoo ¶ 29 ("[R]ecalled tires typically involve a performance defect. As such, it is not proper to assume that their failure is linked to low tire pressure."). As the NHTSA statistician who performed the analysis explained, the agency excluded recalled tires from the data pool because including them would "likely produce misleading results" and skew the relationship between under-inflation and tire failure. Decl. of NHTSA Statistician Susan C. Partyka ¶ 27; *see also* Decl. of Intervenor's Consultant M. Laurentius Marais ¶ 14 (including recalled tires is "unreasonable, unscientific, and unwise"). Public Citizen's tire-failure data (and resulting risk statistics) include recalled tires, resulting in an overstated tire-failure rate and thus an overstated risk attributable to Standard 138.

Second, Public Citizen also overstates the supposed risk from using the 25-percent-below-placard-pressure instead of T&RA pressure as the warning trigger in Standard 138. Its

13

statistical consultant based many of his risk calculations on his estimate that 58 percent of cars have a T&RA pressure that is higher than the 25-percent-below-placard trigger – meaning that in 58 percent of cars, the under-inflation warning would sound earlier if the T&RA pressure were the warning trigger, thus purportedly reducing the risk of death, injury, or property damage to Public Citizen's members.  But Public Citizen did not account for the fact that in its own estimate, 42 percent of cars have a T&RA pressure that is equal to or *lower than* the 25-percent-below-placard trigger in Standard 138.  According to Public Citizen's statistics, the T&RA pressure is lower than the 25-percent-below-placard trigger in 39 percent of cars, meaning that in those cars, the warning would sound *later* under a T&RA-pressure-based system than it will under Standard 138.  Essentially, Public Citizen estimated all of the supposed benefits of the T&RA standard but none of the costs, resulting in calculations that dramatically overstate the risk to Public Citizen's members under Standard 138.

For either of these two alternative reasons, Public Citizen's calculations are unreliable.  Public Citizen therefore has not met its burden to demonstrate standing with respect to the 25-percent-below-placard-pressure warning threshold in Standard 138.[2]

---

[2] In addition, it does not appear that Public Citizen complied with our original opinion's order that it file affidavits addressing the difference in risk of injury between Standard 138 and the proposals "*that Public Citizen has advanced*."  *Public Citizen*, 489 F.3d at 1297 (emphasis added).  Public Citizen never argued to NHTSA that the T&RA pressure was the appropriate measure for significant under-inflation.  Rather, that was the tire manufacturers' position.  Public Citizen instead advocated a "20-percent underinflation detection" standard.  Public Citizen Comments on Std. 138, at 6

14

\* \* \*

If we were deciding this case based solely on the Supreme Court's precedents, we would agree with the separate opinion.  As we read our decisions in *Mountain States* and *NRDC*, however, "this Court has not closed the door to all increased-risk-of-harm cases."  *Public Citizen*, 489 F.3d at 1295.  In an appropriate case, the en banc Court may have to consider whether or how the *Mountain States* principle should apply to general consumer challenges to safety regulations.  In the meantime, "the constitutional requirement of imminence as articulated by the Supreme Court" requires "a very strict understanding of what increases in risk and overall risk levels" will support injury in fact.  *Id.* at 1296.

---

(Nov. 15, 2004), J.A. 1087.  Public Citizen confirmed its position in its initial standing declaration in this Court.  *See* Initial Standing Decl. of Public Citizen President Joan Claybrook ¶ 5 ("Public Citizen submitted comments . . . supporting" monitoring systems "that would alert drivers when one [or] more of their vehicles' tires were 20 percent under-inflated."); *see also Public Citizen, Inc. v. Mineta*, 340 F.3d 39, 62 (2d Cir. 2003) (rejecting Public Citizen's argument for a 20-percent-below-placard-pressure standard in its challenge of the first version of Standard 138).  Public Citizen's materials thus do not appear to comply with this Court's order.  Because Public Citizen's statistical analysis is unreliable, however, we need not rely on this apparent defect.

15

Under this Circuit's precedents, Public Citizen has not met its burden to demonstrate injury in fact. *See id.* at 1295. We dismiss its petition for review.[3]

*So ordered.*

---

[3] Because we find that Public Citizen has not demonstrated injury in fact and thus lacks standing to challenge Standard 138, we need not address its submissions regarding causation. *See Public Citizen*, 489 F.3d at 1297 n.3.

SENTELLE, *Circuit Judge*, concurring in the judgment: I agree with the majority that this case must be dismissed. I remain of the opinion that it should have been dismissed in its last appearance before this Court, *see Public Citizen, Inc. v. Nat'l Highway Traffic Safety Administration*, 489 F.3d 1279, 1298 (D.C. Cir. 2007) (Sentelle, J., dissenting). As the majority noted in the earlier iteration of this litigation, the probabilistic approach to standing now being applied in increased-risk cases expands the "'proper—and properly limited'—constitutional role of the Judicial Branch beyond deciding actual cases or controversies; and . . . entail[s] the Judiciary exercising some part of the Executive's responsibility to take care that the law be faithfully executed." *Public Citizen*, 489 F.3d at 1295 (quoting *Daimler Chrysler v. Cuno*, 547 U.S. 332 (2006)). As the majority further recognized in the earlier opinion, "[t]o the extent Congress is concerned about Executive under-regulation or under-enforcement of statutes, it also may exercise its oversight role and power of the purse." 495 F.3d at 1295 (citing *Laird v. Tatum*, 408 U.S. 1, 15 (1972)).

> As the majority succinctly stated in the earlier opinion:
>
> The Supreme Court has repeatedly held that disputes about future events where the possibility of harm to any given individual is remote and speculative are properly left to the policymaking Branches, not the Article III courts.

*Id.* The majority's discussion today illustrates the ill fit between judicial power and that sort of future event and possible harm. The wide-ranging, near-merits discussion at the standing threshold is the sort of thing that congressional committees and executive agencies exist to explore. The judicial process is constitutionally designed for cases or controversies involving actual or imminent harm to identified persons—that is, the

2

persons who have standing.  If we do not soon abandon this idea of probabilistic harm, we will find ourselves looking more and more like legislatures rather than courts.

I agree with the majority that this case must be dismissed.