## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., *et al.,* ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 07-0668-JDB |
| FOOD & DRUG ADMINISTRATION, *et al.,* ) | |
| Defendants, ) | |
| and ) | |
| DURAMED PHARMACEUTICALS, INC., ) | |
| Defendant-Intervenor. ) | |

## REPLY BRIEF IN SUPPORT OF MOTION FOR
## JUDICIAL NOTICE OF SPEECH BY SEN. CLINTON

Plaintiffs in the above-captioned action respectfully submit this reply in support of their motion for judicial notice of an excerpt from a speech by Senator Hillary Clinton on July 17, 2007. Although defendant-intervenor Duramed Pharmaceuticals, Inc. ("Duramed") did not oppose (and thus concedes) plaintiffs' motion, the federal defendants filed an opposition that concedes that Senator Clinton made the proffered statement, but offers four arguments against this Court's taking judicial notice. Fed'l Opp'n at 1 ("government does not dispute that Senator Clinton made the quoted comment in a speech on the date and in the forum specified"). In the following five sections, plaintiffs respond to the government's four arguments, as well as a possible fifth argument that the defendants' conceding that Senator Clinton made the statement somehow moots the underlying motion for judicial notice.

**Senator Clinton's July 17, 2007, Statement Has No Bearing on Standing or Exhaustion**

Citing its opposition to plaintiffs' pending motion to alter or amend the judgment, the government argues that Senator Clinton's speech "has no bearing on the threshold issues (standing and exhaustion) on which the Court based its dismissal order." Fed'l Defs.' Opp'n at 1

(citing Fed'l Defs.' Opp'n to Pls.' Mot. to Alter or Amend Judgment, at 9 (docket item #47)). While plaintiffs concede that they would have hoped that Senator Clinton's speech would have no bearing on threshold jurisdictional issues, the Court's rejection *sub silentio* of plaintiffs' misbranding and <u>*unlawful*</u>-competition theories suggests otherwise. In any event, as explained in response to the government's second argument, plaintiffs' pending motion raises issues beyond standing and exhaustion, which would render the government's first argument irrelevant if plaintiffs' other submissions meet the threshold issues addressed by the Court's dismissal order.

As with subject-matter jurisdiction generally, courts must assume a plaintiff's merits views to assess standing. *Catholic Soc. Serv. v. Shalala,* 12 F.3d 1123, 1126 (D.C. Cir. 1994); *City of Waukesha v. EPA,* 320 F.3d 228, 235 (D.C. Cir. 2003); *Southern Cal. Edison Co. v. FERC,* 502 F.3d 176, 180 (D.C. Cir. 2007). The general rule's "carved out exceptions" are when "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682-83 (1946); *accord Arbaugh v. Y&H Corp.,* 546 U.S. 500, 513 n.10 (2006); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 642-43 (2002); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89-90 (1998). The Court did not explain its rejection of plaintiffs' merits views, but there are only two possibilities: (1) clear error under FED. R. CIV. P. 59(e), and (2) the Court's finding plaintiffs' misbranding and unlawful-completion arguments immaterial, wholly insubstantial, or frivolous.[1]

---

[1]     Because the comments filed by Kirkpatrick & Lockhart Nicholson Graham on behalf of plaintiffs Concerned Women for America and Family Research Council discuss the misbranding issue and the Rx-OTC dichotomy, Pls.' Mot. to Alter or Amend Judgment, Ex. 1, at 30-31 (docket item #45-4), the government cannot credibly argue that plaintiffs raise misbranding and unlawful competition "solely for the purpose of obtaining jurisdiction." *Hood,* 327 U.S. at 682.

Because the government disavows the first possibility, *see* Fed'l Defs.' Opp'n to Pls.' Mot. to Alter or Amend Judgment, at 1 ("Plaintiffs… have failed to meet their burden of establishing… clear error") (docket item #47), the government must assume the second. Although the government asserts that the Court did not reach the merits of plaintiffs' claims, Fed'l Opp'n at 1, dismissing for want of standing amounts to the same thing for a plaintiff who bases standing on the authorization of otherwise-illegal conduct. *Compare Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,* 366 F.3d 930, 947 (D.C. Cir. 2004) ("Our holding today thus does not prevent appellants from obtaining review of their claims on the merits, when raised in a judicially reviewable case or controversy") ("*NWCA*") *with Coll. Sports Cncl. v. Dep't of Educ.,* 465 F.3d 20, 23 (D.C. Cir. 2006) ("The statutory and constitutional issues raised in this case have been conclusively settled by this court in *NWCA*"). The Court's holdings on standing therefore appear to reject on the merits the plaintiffs' misbranding theory.

By expressly conditioning Dr. von Eschenbach's confirmation on his approval of Plan B for over-the-counter distribution, Senator Clinton's speech places this action squarely within this Circuit's long line of improper-pressure precedents. *See, e.g., D.C. Fed'n of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 1246 (D.C. Cir.); *Koniag, Inc., Village of Uyak v. Andrus,* 580 F.2d 601, 610 (D.C. Cir. 1978); *Sierra Club v. Castle,* 657 F.2d 298, 408-10 (D.C. Cir. 1981); *ATX, Inc., v. U.S. Dep't of Transp.,* 41 F.3d 1522, 1527 (D.C. Cir. 1994). For that reason, plaintiffs respectfully submit that Senator Clinton's speech significantly undermines whatever deference the government's actions otherwise may warrant and, inversely, increases the materiality, substantiality, and non-frivolousness of plaintiffs' merits view that dual Rx-OTC drugs are misbranded, as provided by both the enacting Congress and the implementing regulations. SAC ¶52 ("over-the-counter drugs are forbidden to bear a label containing this [prescription] caution

statement") (quoting S. Rep. No. 82-946, at 10 (1951) and citing 21 C.F.R. §310.200(d)); *accord* 21 C.F.R. §310.200(d) ("The use of the prescription caution statement quoted in [§]503(b)(4) of the act, in the labeling of a drug exempted under the provisions of this section, constitutes misbranding"). Because Senator Clinton's ultimatum undercuts both this Court's deference to the defendants' unprecedented dual Rx-OTC approval and this Court's *sub silentio* rejection of plaintiffs' merits views, the speech meets Fed. R. Evid. 401's test for relevance on the contested issue of standing by having "any tendency to make the existence of any fact [namely, pressure] that is of consequence to the determination of the action more probable… than it would be without the evidence."

For the foregoing reason, the government's first argument is arguably irrelevant and certainly without merit.

**Senator Clinton's July 17, 2007, Speech Does Not Bolster Plaintiffs' Pending Motion**

Citing its opposition to plaintiffs' pending motion to alter or amend the judgment, the government argues that Senator Clinton's speech "does not bolster in any way plaintiffs' purported justifications for reopening judgment or amending the complaint." Fed'l Defs.' Opp'n at 1 (citing Fed'l Defs.' Opp'n to Pls.' Mot. to Alter or Amend Judgment, at 12 (docket item #47)). Under the circumstances, however, Senator Clinton's speech bolsters the plaintiffs' arguments both for amending the complaint under Fed. R. Civ. P. 15(a) and for the merits under the pending motions under Fed. R. Civ. P. 12(b)(6) and 52(c).

First, plaintiffs happened upon Senator Clinton's speech on January 23, 2008, while their motion to certify the record still was pending, which enabled plaintiffs to strengthen the pleading of their improper-pressure count. *See* Pls.' Mot. to Alter or Amend Judgment at 44 (docket item #45); Reply in Support of Pls.' Mot. to Alter or Amend Judgment at 2-3, 4, 9-10 (docket item

#49). Specifically, with respect to plaintiffs' First Amended Complaint ("FAC"), the defendants considered it significant that the "FAC does not allege that the Senators sought to influence the substance of the decision" on Plan B. Duramed Reply Br. in Support of Mot. to Dismiss, at 25 (docket item #33). Based on Senator Clinton's speech, the Second Amended Complaint ("SAC") now alleges that Senator Clinton expressly conditioned Dr. von Eschenbach's sought-after confirmation on his approval of Plan B. SAC ¶¶79-80 (docket item #45-3). Thus, Senator Clinton's speech plainly supports plaintiffs' motion under FED. R. CIV. P. 15(a).

Second, as explained in the prior section, Senator Clinton's speech also bears on the merits issues raised by plaintiffs' pending motion under FED. R. CIV. P. 52(c). Similarly, as this Court recently held, a court faced with a post-dismissal motion "is free to expand on the reasons supporting the entry of judgment for defendant." *Dage v. Johnson,* 537 F.Supp.2d 43, 49 (D.D.C. 2008) (Bates, J.). Thus, Senator Clinton's speech is also relevant to the merits issues raised by the defendants' motions under FED. R. CIV. P. 12(b)(6). Finally, as explained in more detail in the next section, Senator Clinton's speech not only enabled plaintiffs to bolster their improper-pressure pleadings, but also constitutes *evidence* in its own right that improper pressure.

For the foregoing reasons, the government's second argument is meritless.

**Senator Clinton's July 17, 2007, Speech Is Not Part of the Administrative Record**

The government next argues that Senator Clinton's speech on July 17, 2007, is not part of the administrative record for the decision to approve Plan B for dual Rx-OTC distribution on August 24, 2006. Fed'l Defs.' Opp'n at 2. However correct that may be, the government's argument is irrelevant because the speech need not be part of the record for plaintiffs to rely on it to amend their improper-pressure pleadings under FED. R. CIV. P. 15(a). Moreover, the speech constitutes an admission of a party opponent, independent of the administrative record.

Under the 1974 amendments to Rule 801, "[a] statement is not hearsay if… [t]he statement is offered against a party and is… a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2)(D). In a suit against an official-capacity government officer or a government agency, the admission of any government agent or servant applies to other persons and entities within that government because a "lawsuit against a government official in his official capacity is an action against the governmental entity of which the official is an agent." *Wilburn v. Robinson,* 480 F.3d 1140, 1148-49 (D.C. Cir. 2007) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)); *Belton v. Washington Metro. Area Transit Auth.,* 20 F.3d 1197, 1201-02 (D.C. Cir. 1994) (police officer's statement applies to metropolitan transit agency in civil suit for damages); *cf. U.S. v. Paxson,* 861 F.2d 730, 734-735 (D.C. Cir. 1988) ("if the factors which normally make up an agency relationship are present, the evidence should not be excluded simply because the statement is offered against a corporate officer rather than the corporation") (interior citations omitted). Here, plaintiffs have sued the United States, as the Administrative Procedure Act's waiver of sovereign immunity plainly allows:

> The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers….

5 U.S.C. §702 (emphasis in original). Senator Clinton's admission therefore applies to the federal government, its agencies, and their officers (*i.e.,* to defendants United States, FDA, and von Eschenbach).

Significantly, for agency purposes, it does not matter that Senator Clinton is not an agent of FDA or of Dr. von Eschenbach. She unquestionably is a member of defendant United States' Senate, and her hold on Dr. von Eschenbach's confirmation was within the scope of her agency

and service in the U.S. Senate. *See* Ex. 1 (Senate's history website lists Senator Clinton as having served from January 3, 2001, through the present); Reply in Support of Pls.' Mot. to Alter or Amend Judgment, Ex. 3, at 2, 5, 38-42 (Senator Clinton served on Senate committee with oversight of Dr. von Eschenbach's confirmation) (docket item #49-4); Ex. 2 (Senate committee roster continues to list Senator Clinton as member). Under the circumstances, Senator Clinton's speech qualifies as an admission under Rule 801(d)(2)(D).

Finally, Senator Clinton's admission is admissible. *See AT&T Info. Sys., Inc. v. G.S.A.,* 810 F.2d 1233, 1236 (D.C. Cir. 1987) ("new material" admissible if it "[is] merely explanatory of the original record and… contain[s] no new rationalizations") (citing *Bunker Hill Co. v. EPA,* 572 F.2d 1286, 1292 (9th Cir.1977)); *Washington v. Cameron,* 411 F.2d 705, 710 (D.C. Cir. 1969) (court reviewing *ex parte* proceedings may allow supplementing the record via interrogatories and admissions); *Commercial Drapery Contractors, Inc. v. U.S.,* 133 F.3d 1, 7 (D.C. Cir. 1998) (courts may expand on administrative record "when there has been a 'strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review"). In summary, the fact that Senator Clinton's speech is not in the administrative record is irrelevant because Senator Clinton's speech explains the original record.

For the foregoing reasons, the government's third argument is irrelevant and, thus, meritless.

**Senator Clinton's August 1, 2006, Press Release Qualifies her July 17, 2007, Speech**

Getting it precisely backwards, the government argues that Senator Clinton's August 1, 2006, press release "contradict[s] and/or qualifie[s]" her subsequent speech on July 17, 2007, because "she stated that she would 'not lift the hold until the FDA makes a decision on Plan B, *yes or no.*'" Fed'l Opp'n at 2 (quoting "Senator Clinton Press Release (August 1, 2006)")

(government's emphasis). First, Senator Clinton's 2006 press release in no way contradicts her 2007 speech. Second, if there is any qualifying, it is Senator Clinton's 2007 speech that qualifies her 2006 press release, not the other way around.

By citing Senator Clinton's press release, the government *appears* to concede that matters outside the typical supplemental new drug approval ("SNDA") file may constitute the relevant administrative record for this unprecedented and decidedly atypical SNDA. Plaintiffs reiterate, however, that the Court should require the government to certify the entire record before relying on the government's piecemeal citation to the record. *NRDC v. Train,* 519 F.2d 287, 291-92 (D.C. Cir. 1975) ("[T]he court proceeded with its review on the basis of a partial and truncated record. We think this was error."); *Washington v. Cameron,* 411 F.2d 705, 710 (D.C. Cir. 1969) ("the court cannot rely merely on the one-sided and challenged record of the Commission"); *cf. U.S. v. Kelly,* 790 F.2d 130, 135 (D.C. Cir. 1986) (The "government counsel made a series of unsworn representations in its briefs and in open court as to the 'true state of affairs…' The government cannot, however, establish this or any other 'true state of affairs' by mere assertions without affidavits."). Without a certified record or even an affidavit, the defendants cannot make establish the level of pressure that the Senators exerted over the approval of Plan B for dual Rx-OTC distribution.

Whether or not the defendants concede that Senator Clinton's press release is part of the administrative record, plaintiffs also protest the selective and incomplete citation to the press release itself. In this action, the defendants have steadfastly avoided presenting this Court with the administrative record, *see* Pls.' Mot. for Judicial Notice, at 3 (citing filings by government and Duramed), and appear to have actively misrepresented the contents of that record to this Court, *see* Pls.' Reply Br. in Support of Motion to Alter or Amend Judgment, at 20-21

(contrasting defendants' representations to this Court with Dr. von Eschenbach's testimony to Congress) (docket item #49). This Court should not extend defendants' counsel its unchecked credulity when defendants offer mere excerpted quotations from the administrative record, without the qualifying language that surrounds the defendants' excerpts.

In pertinent part, the press release quoted by the government provides the following two sentences on the holds placed by Senators Murray and Clinton:

> Senator Clinton, along with Senator Patty Murray, last year placed a hold on Dr. von Eschenbach's nomination and made clear they would not lift the hold until the FDA makes a decision on Plan B, yes or no. Today, Senator Clinton made clear that this hold will stay in place until the FDA makes a decision.

Supplemental Declaration of Lawrence J. Joseph, ¶6 (Ex. 3); *accord* Office of Sen. Hillary R. Clinton, *Senator Clinton Presses Acting FDA Commissioner on Plan B,* at 1 (press release dated Aug. 1, 2006) (Ex. 4). The first quoted sentence plainly says that, as initially placed the prior year, the Senators' holds would not lift until FDA made a decision. That arguably implies that, *as initially placed the prior year,* the Senators' holds would lift when FDA made a decision. But the first sentence in no way promises that the Senators would lift the hold, as initially placed, when FDA made a decision. Similarly, the second sentence merely provides that, as of the press release's date, Senator Clinton made clear that her hold would stay in place until FDA makes a decision. The second sentence in no way promises that Senator Clinton will lift her hold if FDA ultimately decides against making Plan B available OTC. In summary, the first sentence does not negate Senator Clinton's speech to Planned Parenthood. It is entirely consistent that, *after she initially placed the hold the prior year,* Senator Clinton privately issued the ultimatum described in her speech. And the second sentence in no way promises that Senator Clinton would lift her hold if FDA declined to meet the terms of her ultimatum.

9

Nothing that the government has produced to date demonstrates that Senator Clinton, *at any time*, promised to lift her hold if FDA disapproved Plan B's OTC distribution. Further, even if one accepts the *arguable* implication that, *as initially placed,* the holds would lift upon FDA's approving or disapproving Plan B's OTC distribution, absolutely nothing states or even implies that Senator Clinton did not – as her 2007 speech plainly states – subsequently condition her lifting the hold on *approval* of Plan B's OTC distribution.

Plaintiffs recognize that some may consider their parsing of Senator Clinton's press release as semantics. But plaintiffs respectfully submit that the Clintons are skilled users of political semantics. In any event, admissions are exempt from the hearsay rule precisely because they represent unguarded moments of honesty, which might differ from a party's public position.

For the foregoing reasons, the government's third argument is factually mistaken, based on an uncertified and incomplete record, and without merit.

**Conceding Senator Clinton's July 17, 2007, Speech Does Not Moot this Motion**

A party cannot render evidence irrelevant by conceding or admitting an issue. *Old Chief v. U.S.,* 519 U.S. 172, 179, 186-88 (1997); *U.S. v. Douglas,* 482 F.3d 591, 597-98 & n.9 (D.C. Cir. 2007). Moreover, as indicated above, Senator Clinton's speech constitutes the admission by the federal government of an issue that the government continues to dispute (namely, that Dr. von Eschenbach's confirmation was a quid pro quo for his approving Plan B for OTC distribution). As such, evidence of Senator Clinton's speech retains an ongoing relevance in this litigation, not only now, but even after the government certifies the record.

**Conclusion**

For the foregoing reasons and those in the underlying motion, the plaintiffs respectfully request that the Court grant their motion for judicial notice.

Dated: May 8, 2008                    Respectfully submitted,


 /s/ Lawrence J. Joseph
Lawrence J. Joseph, D.C. Bar No. 464777

1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
Telephone: (202) 669-5135
Telecopier: (202) 318-2254

*Counsel for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May, 2008, I electronically filed the foregoing "Reply Brief in Support of Motion for Judicial Notice of Speech by Sen. Clinton" (together with its accompanying exhibits) with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of Jane M. Lyons of the U.S. Attorney's Office for the District of Columbia, on behalf of the federal defendants, and of Richard M. Cooper, on behalf of defendant-intervenor Duramed Pharmaceuticals, Inc.

/s/ Lawrence J. Joseph
Lawrence J. Joseph

**EXHIBIT 1**



Biographical Directory
of the
United States Congress

1774 - Present

★ Biography
★ Research Collections
★ Bibliography
★ New Search
★ House History Page
★ Senate History Page
★ Copyright Information

# CLINTON, Hillary Rodham, (1947 - )

**Senate Years of Service:** 2001-
**Party:** Democrat



CLINTON, Hillary Rodham, (wife of President William Jefferson Clinton), a Senator from New York; born on October 26, 1947, in Chicago, Illinois; attended public school in Park Ridge, Illinois; graduated Wellesley College, BA 1969; graduated Yale Law School, JD 1973; attorney; counsel, impeachment inquiry staff, House Judiciary Committee 1974; First Lady of Arkansas 1979-1981, 1983-1993; First Lady of the United States 1993-2001; elected to the United States Senate for term commencing January 3, 2001; reelected in 2006 for the term ending January 3, 2013.

## Bibliography

Clinton, Hillary Rodham. *Living History*. New York: Simon & Schuster, 2003.

**EXHIBIT 2**



# U.S. SENATE COMMITTEE ON HEALTH, EDUCATION, LABOR, & PENSIONS

Michael B. Enzi
Ranking

Edward M. Kennedy
Chairman

**Home   Subcommittees   About   Press Releases   Photo Gallery   Search**

EMAIL THE COMMITTEE

**Health      Education      Labor      Pensions      Hearings      Bills**



# ABOUT THE COMMITTEE



### COMMITTEE MEMBERS

**Democrats by Rank**

Edward Kennedy (MA)
Christopher Dodd (CT)
Tom Harkin (IA)
Barbara A. Mikulski (MD)
Jeff Bingaman (NM)
Patty Murray (WA)
Jack Reed (RI)
Hillary Rodham Clinton (NY)
Barack Obama (IL)
Bernard Sanders (I) (VT)
Sherrod Brown (OH)

**Republicans by Rank**

Michael B. Enzi (WY)
Judd Gregg (NH)
Lamar Alexander (TN)
Richard Burr (NC)
Johnny Isakson (GA)
Lisa Murkowski (AK)
Orrin G. Hatch (UT)
Pat Roberts (KS)
Wayne Allard (CO)
Tom Coburn, M.D. (OK)

## The Chairman

### Edward M. Kennedy

Senator Edward M. Kennedy has represented Massachusetts in the United States Senate for forty-three years. He was elected in 1962 to finish the final two years of the Senate term of his brother, Senator John F. Kennedy, who was elected President in 1960.  Since then, Kennedy has been re-elected to seven full terms, and is now the second most senior member of the Senate.

Kennedy is currently the senior Democrat on the Health, Education, Labor and Pensions Committee. Throughout his career, Kennedy has fought for issues that benefit the citizens of the nation. His effort to make quality health care accessible and affordable to every American is a battle that Kennedy has been waging ever since he arrived in the Senate.  In addition, Kennedy is active on a wide range of other issues, including education reform and immigration reform, raising the minimum wage, defending the rights of workers and their families, strengthening civil rights, assisting individuals with disabilities, fighting for cleaner water and cleaner air, and protecting and strengthening Social Security and Medicare.

Kennedy is the youngest of nine children of Joseph P. Kennedy and Rose Fitzgerald Kennedy, and is a graduate of Harvard University and the University of Virginia Law School. Kennedy lives in Hyannis Port, Massachusetts, with his wife Victoria Reggie Kennedy.  Together, they have five children – Kara, Edward Jr., and Patrick Kennedy, and Curran and Caroline Raclin.  They also have four grandchildren.

For more information about Senator Edward M. Kennedy, please visit his website -

Committee on Health, Education, Labor and Pensions - 428 Senate Dirksen Office Building
Washington, DC 20510

Health | Education | Labor | Pensions | Hearings | Bills | About the Committee
Subcommittees | Photo Gallery | Press Releases | Contact | Home

http://help.senate.gov/About.html                                                             5/8/2008

**Exhibit 3**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ASSOCIATION OF AMERICAN PHYSICIANS )
& SURGEONS, INC., *et al.,* )

    Plaintiffs, )

           v. )

FOOD & DRUG ADMINISTRATION, *et al.,* )

    Defendants, )

        and )

DURAMED PHARMACEUTICALS, INC., )

    Defendant-Intervenor )
)

Civil Action No. 07-0668-JDB

## SUPPLEMNENTAL DECLATIONATION LAWRENCE J. JOSEPH

I, Lawrence J. Joseph, hereby declare and state as follows:

1.      I am over the age of 18, and I reside in McLean, Virginia.

2.      I am an attorney representing plaintiffs Association of American Physicians & Surgeons, Inc., Concerned Women for America, Family Research Council, and Safe Drugs for Women (collectively "Plaintiffs") in the above-captioned action.

3.      On May 8, 2008, I visited the website of the United States Senate (senate.gov), clicked on the "Art & History" tab, then the "People" link, and finally the "Biographical Directory of the U.S. Congress" icon, which took me to the search page for the Biographical Directory of the United States Congress (http://bioguide.congress.gov/biosearch/biosearch.asp).

4.      From that search page, I entered Hillary and Clinton as first and last names, respectively, which took me to a link for Senator Hillary Clinton of New York, which lead to the webpage (http://bioguide.congress.gov/scripts/biodisplay.pl?index=C001041) setting forth the

biography of Senator Clinton. I downloaded that webpage to pdf and attach it as Exhibit 1 to plaintiffs' Reply Brief in Support of Motion for Judicial Notice of Speech by Sen. Clinton in the above-captioned action.

5.     On May 8, 2008, I visited the website of the United States Senate (senate.gov), clicked on the "Committees" tab, then the "Health, Education, Labor, and Pensions" link, and finally the "About" tab, which took me to a webpage about that Committee, which includes a roster of Committee members in the left margin (http://help.senate.gov/About.html). I downloaded that webpage to pdf and attach it as Exhibit 2 to plaintiffs' Reply Brief in Support of Motion for Judicial Notice of Speech by Sen. Clinton in the above-captioned action.

6.     On May 8, 2008, I visited the webpage identified on page 2 of the federal defendants' opposition (docket item #52) to the plaintiffs' motion for judicial notice of a statement made by Senator Clinton in her speech to Planned Parenthood on July 17, 2007. The press release on that webpage is dated August 1, 2006, captioned "Senator Clinton Presses Acting FDA Commissioner on Plan B," and subcaptioned "Clinton Presses von Eshenbach on Whether He Would Accept a Recess Appointment."  As it currently appears, the press release's lead paragraph states as follows:

> **Washington, DC** - At his Senate confirmation hearing, Senator Hillary Rodham Clinton pressed acting FDA Commissioner Andrew von Eschenbach on the continuing unusual handling of the pending application to sell Plan B over the counter. After years of delay and nearly a year of silence on the Plan B application, FDA on the eve of Dr. von Eschenbach's confirmation hearing sent a letter to the manufacturer of Plan B asking for a meeting to discuss the status of the application. Senator Clinton, along with Senator Patty Murray, last year placed a hold on Dr. von Eschenbach's nomination and made clear they would not lift the hold until the FDA makes a decision on Plan B, yes or no. Today, Senator Clinton made clear that this hold will stay in place until the FDA makes a decision.

I downloaded that webpage to pdf and attach it as Exhibit 4 to plaintiffs' Reply Brief in Support

of Motion for Judicial Notice of Speech by Sen. Clinton in the above-captioned action. I have no

personal knowledge on whether the press release that appears at the link identified on page 2 of

the federal defendants' opposition is authentic, whether the press release was issued on August 1,

2006, or whether anyone has modified the press release since its issuance.

7.    Except as otherwise expressly noted above in Paragraph 6, I have personal

knowledge of the foregoing and am competent both to testify to it at trial and/or to establish it by

the submittal of documentary evidence at trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day

of May 2008.


  /s/ Lawrence J. Joseph
Lawrence J. Joseph

**EXHIBIT 4**



August 1, 2006

## Senator Clinton Presses Acting FDA Commissioner on Plan B

*Clinton Presses von Eshenbach on Whether He Would Accept a Recess Appointment*

**Washington, DC** - At his Senate confirmation hearing, Senator Hillary Rodham Clinton pressed acting FDA Commissioner Andrew von Eschenbach on the continuing unusual handling of the pending application to sell Plan B over the counter. After years of delay and nearly a year of silence on the Plan B application, FDA on the eve of Dr. von Eschenbach's confirmation hearing sent a letter to the manufacturer of Plan B asking for a meeting to discuss the status of the application. Senator Clinton, along with Senator Patty Murray, last year placed a hold on Dr. von Eschenbach's nomination and made clear they would not lift the hold until the FDA makes a decision on Plan B, yes or no. Today, Senator Clinton made clear that this hold will stay in place until the FDA makes a decision.

"The FDA is and should be the gold standard for drug safety and efficacy and unfortunately, like so much else of this government in the last five and half years, has been turned into a political football," said Senator Clinton. "Once we start politicizing the FDA there is no stopping and from my perspective it is essential that we draw a line, and we're drawing a line right here."

Senator Clinton noted that the GAO concluded that consideration of the Plan B application had been politicized, and highlighted the attendance of Dr. Susan Wood, who along with other FDA officials resigned in protest over the FDA's handling of Plan B.

Underscoring the importance of the FDA making decisions based on science not ideology, Senator Clinton said "This is a dangerous, slippery slope we're on Doctor and we're looking to you to get a decision made."

Senator Clinton questioned Dr. von Eshenbach on whether or not he would accept a recess appointment before a decision is made on Plan B. Dr. von Eschenbach indicated that he wanted the Senate Committee to consider his nomination on the merits.

Senator Clinton also pressed Dr. von Eshenbach on a letter released by the FDA yesterday that suggested that, if the FDA approves Plan B for over the counter sale to those 18 and over, the FDA would hold the maker of Plan B to an unusual standard, requiring the producer – not retailers selling Plan B – to police and enforce age restrictions on the sale of Plan B. Senator Clinton secured a commitment from Dr. von Eschenbach that the FDA would not hold the producer of Plan B to unprecedented standards to enforce limitations on its sale beyond what has been expected of any other company.

### 

**clinton.senate.gov**